# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WENDELL TINSLEY, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-12-2760 |
| KATHLEEN S. GREEN, et al., | * | |
| Defendants | * | |

***

## MEMORANDUM

Pending is a motion to dismiss or, in the alternative, for summary judgment filed on behalf of defendants Kathleen S. Green and Robert B. Hanke. ECF No. 12. Plaintiff has responded (ECF Nos. 21 & 23) and defendants have filed a reply. ECF No. 22. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the motion, construed as a motion for summary judgment, will be GRANTED.

## Background

Tinsley, a self-represented inmate currently housed at the Maryland Correctional Training Center ("MCTC"), initiated these proceedings alleging that defendants Kathleen S. Green, the Warden of Eastern Correctional Institution ("ECI"), and Robert B. Hanke, the Assistant Warden of ECI, violated his constitutional rights by indefinitely suspending his visiting privileges. Plaintiff states that he was charged with an inmate rule infraction on April 18, 2011, for events occurring the preceding day. He states that his visiting privileges were rescinded by a memo issued by Hanke on April 28, 2011, but plaintiff was not found guilty of a rule violation until May 24, 2011. Plaintiff seeks compensatory damages as well as a declaration that the acts

described in his complaint violated his rights and an injunction directing defendants to reverse the May 24, 2011, guilty finding. ECF No. 1.

The record evidence demonstrates that on April 17, 2011, plaintiff was found in possession of heroin hidden in a glove in his cell. ECF No. 12, Ex. 1; ECF No. 22, Ex. 2. He was served with notice of an inmate rule infraction. ECF No. 22, Ex. 2. Plaintiff admitted to being in possession of the glove and its contents.[1] ECF No. 12, Ex. 3 and ECF No. 22, Ex. 2.

On April 28, 2011, having found that allowing visitation with plaintiff would jeopardize the safety and security of the institution, Hanke suspended plaintiff's visitation privileges for conspiring to introduce contraband into the institution. ECF No. 22, Exs. 4 & 6. Plaintiff was advised that he could appeal the loss of visitation within five days of receipt of Hanke's letter. A copy of the letter was sent to the Regional Assistant Commissioner of Corrections. ECF No. 22, Ex. 6. Defendants contend that plaintiff did not appeal the suspension of visitation to the warden. ECF No. 12, Exs. 4 & 5; ECF No. 22, Ex. 7. Plaintiff disputes this contention, noting that he endeavored to appeal the denial of visitation through review in the Circuit Court for Somerset County.[2] ECF No. 21.

On May 24, 2011, after a hearing, plaintiff was found guilty of a Rule 114 violation (possession of contraband), by Hearing Officer Mack and sanctioned to 365 days segregation beginning April 17, 2011, loss of 500 good conduct credits, and loss of 365 days visitation from

---

[1] Subsequently, plaintiff, represented by counsel, pled guilty to possession with intent to distribute a controlled dangerous substance in state court and was sentenced to an additional 15 years of confinement. ECF Nos. 21; ECF No. 22, Ex. 3.

[2] Plaintiff's appeals arose out of his inmate rule violation hearings rather than an appeal of the administrative action taken by Hanke. ECF No. 22, Ex. 2. As the two issues were integrally intertwined, the court does not find plaintiff's failure to appeal Hanke's suspension of visitation fatal to review of his claim here.

May 24, 2011, to May 23, 2012. ECF No. 12, Exs. 1 & 2. Plaintiff's appeal of the hearing officer's decision was denied by Hanke. *Id.*, Ex. 6.

Plaintiff filed two grievances regarding the disciplinary hearing. ECF No. 22, Ex. 2. He complained that he could not be sanctioned to loss of visitation by the hearing officer because it violated his Fifth Amendment right (double jeopardy), given that Hanke had already sanctioned him to loss of visitation. *Id.* In neither grievance did plaintiff claim his rights were violated by Hanke denying his visitation privilege without a hearing. *Id.*

On August 10, 2012, plaintiff was transferred to MCTC. ECF No. 22, Ex. 8. On December 27, 2012, after pleading guilty to a Rule 105 violation (possession of a weapon), plaintiff was sanctioned to an indefinite loss of visitation. ECF No. 12, Ex. 7. On January 7, 2013, plaintiff requested reinstatement of his visitation privileges to MCTC's Warden Morgan. ECF No. 22, Ex. 8. Morgan denied the request, noting that plaintiff received a mandatory indefinite loss of visits effective December 27, 2012, due to the weapons violation. The Warden further noted this was plaintiff's third mandatory loss of visitation privileges and advised plaintiff that he was not eligible to apply for reinstatement of privileges at that time but could reapply for reinstatement of visitation in June 2014—eighteen months after the loss of visitation imposed due to the December 2012 infraction.[3] *Id.* Plaintiff has not suffered a permanent loss of visitation, mail, or telephone privileges. ECF No. 12, Exs. 1, 4 & 7.

---

[3] Department of Public Safety and Correctional Services policy provides for progressive sanctions to deter inmate misconduct. Mandatory sanctions such as indefinite suspension of visitation privileges are imposed for certain enumerated offenses, including possession of illegal drugs and weapons. ECF No. 22, Ex. 12, DPSCS DCD #105-8.V.14.a and b. An inmate whose privileges have been indefinitely suspended may, 18 months after the sanction was imposed, apply for reinstatement of the privilege. *Id.*, DPSCS DCD #105-8.V.14.c.

## Standard for Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson* the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. No genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

Tinsley asserts the defendants violated his constitutional right to due process and his right not to be subjected to double jeopardy. In prison disciplinary proceedings that bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id*. at 564-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455

5

(1985). Plaintiff received all the process he was due. He was given timely advance written notice of the infractions and was permitted to attend the disciplinary hearing and to call witnesses on his own behalf.[4] He also received written findings of the hearing officer. Moreover, the hearing officer's finding of guilt was based upon some evidence, i.e., review of plaintiff's testimony, staff statements, chain of custody report, photographic evidence, laboratory report, and the written record, upon which the hearing officer based determinations as to credibility and demeanor.

Further, the court finds that "indefinite" restrictions placed on plaintiff's visits do not violate his constitutional rights. *See Overton v. Bazzetta*, 539 U.S. 126, 133-134 (2003).[5] The events which led to the indefinite suspension of visitation are well documented as noted herein, as is plaintiff's disciplinary history. Curtailment of visitation, recreation, and property privileges, which emphasizes the connection between an inmate's choices and consequences, is rationally related to providing a safer prison environment. *Id*. at 134. Plaintiff may apply for

---

[4] Plaintiff states that he was advised by correctional staff when he was served with the violation that he could later add the names of witnesses and inmate representatives to the forms. ECF No. 21. At the hearing, plaintiff maintained that his request to call witnesses was denied. It is noted that the notice of rule infraction specifically states that failure to name witnesses and representatives when signing the form constitutes a waiver. ECF No. 22, Ex. 2. There is no indication that plaintiff endeavored to identify witnesses or secure their affidavits prior to the hearing. It is also unclear what evidence plaintiff hoped to elicit from the witnesses, other than plaintiff's speculative claim regarding chain of custody.

[5] In *Overton*, the United States Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not result in cruel and unusual punishment. *Overton*, 539 U.S. at 137–38 (finding a two-year deprivation of visitation privileges did not violate the Eighth Amendment). The Supreme Court explained as follows:

> This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. If the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations.

*Id.,* 539 U.S. at 137 (citations omitted).

reinstatement of the privilege when the 18-month period expires.[6] His visitation was not permanently suspended. Defendants' actions are not constitutionally violative as the withdrawal of "visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." *Id.* Although the suspension of plaintiff's visitation is restrictive, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

Lastly, plaintiff's claim that the denial of visitation privileges violated his rights under the Double Jeopardy Clause is without merit. The Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense." *See Hudson v. United States*, 522 U.S. 93, 99 (1997). It is axiomatic that prison disciplinary proceedings are not part of a criminal prosecution. *See Wolff*, 418 U.S. at 556; *United States v. Mayes*, 158 F.3d 1215, 1224-25 (11th Cir. 1998) (prison disciplinary sanctions are not "criminal" for double jeopardy purposes.). *See also Patterson v. United States,* 183 F.2d 327, 328 (4th Cir. 1950) ("Criminal prosecution for the crime of escape is not prohibited under the double jeopardy clause of the Fifth Amendment because a convict guilty thereof has upon his recapture been subjected to discipline by the prison authorities for the violation of prison discipline involved."), *cited in United States v. Moss,* 445 F. App'x 632, 634 (4th Cir. 2011) (unpublished).

---

[6] If plaintiff's application for reinstatement of his visiting privileges is denied, he may file a new complaint seeking review of the claim.

A separate Order will be entered granting defendants' motion for summary judgment.

DATED this 17th day of June , 2013.

BY THE COURT:

/s/
James K. Bredar
United States District Judge